IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KEITH TATE, | ) | CASE NO. 1:18cv979 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN CHRISTOPHER LAROSE, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Keith Tate ("Petitioner" or "Tate") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Tate is detained at the Northeast Ohio Correctional Center, having been found guilty by a Cuyahoga County, Ohio, Court of Common Pleas jury of one count of attempted murder, two counts of felonious assault, and all attendant one- to three-year firearm specifications; and, after a bench trial, one count of having a weapon under a disability.  *State v. Tate*, Case No. CR-15-593628-A (Cuyahoga Cty. Common Pleas Ct., filed July 13, 2015).  At sentencing, the trial court merged the felonious assault and attempted murder counts and sentenced Tate to eleven years for attempted murder; applied the 3-year firearm specification on that count; and sentenced him to 3 years on the weapon under a disability count, all to be run consecutively, for a total of 17 years in prison.  Doc. 7-1, p. 71.

On April 30, 2018, Tate, through counsel, filed his Petition for Writ of Habeas Corpus setting forth five grounds for relief.  Doc. 1, pp. 5-12.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2. As set forth more fully below, Tate's grounds for relief are not cognizable and/or fail on the merits.  Thus, the undersigned recommends that Tate's Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

# I.  Background

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment

of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).

The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

## A.  State Court Action

### 1.  Underlying Facts

The following summary of underlying facts is taken from the opinion of the Cuyahoga

County Court of Appeals, Eighth Appellate District of Ohio:[1]

> {¶ 10} At trial, DeJesus testified that on September 29, 2013, he went to a gas station at 657 East 152nd Street in Cleveland, Ohio. He observed Tate, whom he knew as "Keith," and the two exchanged words as DeJesus stood up to leave. Tate followed DeJesus as he walked to his car. DeJesus asked, "What's up?" Tate replied, "What's sup with you?" Tate then pulled out a gun and fired approximately five shots at DeJesus, striking him. As a result of the shooting, DeJesus is now paralyzed from the neck down, and he requires constant care.

> {¶ 11} DeJesus testified that he identified Tate from a photo array the police presented to him when he was in the hospital. DeJesus confirmed this same selection on the same photo array for the jury. He also identified Tate in court for the jury.

> {¶ 12} Detective Durbin testified that approximately 11 days after the shooting, when DeJesus was taken off of a ventilator and could "slightly speak," he went to MetroHealth Hospital to meet with him. Detective Durbin learned the name of the suspect from DeJesus and compiled a six-photo array. Detective Durbin then contacted MetroHealth Police Sergeant William Peck to serve as the "blind administrator." After the administration of the array, in which DeJesus chose Tate's photo, Detective Durbin spoke with DeJesus and confirmed that DeJesus had selected Tate. Because of his paralysis, DeJesus could not write down his degree of certainty, but he told Detective Durbin that he was 100 percent certain.

> {¶ 13} Dr. Nimitt Patel testified that he was the attending surgeon on call when DeJesus was brought into the MetroHealth Emergency Room for treatment of gunshot wounds. During the course of treatment, DeJesus's blood pressure dropped and fluids had to be

---

[1]  Tate has not demonstrated by clear and convincing evidence that the state court's findings were incorrect. Accordingly, the state court's findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1); *see also Railey*, 540 F. 3d at 397.

administered in order to keep DeJesus alive. After surgery, DeJesus required a ventilator in order to breathe. Dr. Patel further testified that because of the severity of the bullet wounds, DeJesus is now a quadriplegic.

*State v. Tate*, 70 N.E.3d 1056, 1061-1062 (Oh. Ct. App. 2016).

### 2. Procedural History

On February 27, 2015, a Cuyahoga County Grand Jury indicted Tate on one count of attempted murder, R.C. 2923.02/2903.02(A), with 1-and 3-year firearm specifications; two counts of felonious assault, R.C. 2903.11(A)(1),(A)(2), with 1-and 3-year firearm specifications, and one count of having a weapon under a disability, R.C. 2923.13(A)(3).  Doc. 7-1, pp. 4-6. Tate, through counsel, pleaded not guilty.  Doc. 7-1, pp. 8, 9.  Trial was set for May 20, 2015. Doc. 7-1, p. 9.

On April 3, 2015, Tate, through counsel, filed a motion to dismiss the indictment, alleging that his federal constitutional and state speedy trial rights were violated due to a pre-indictment delay.  Doc. 7-1, pp. 10-23.  On May 4, 2015, the trial court denied Tate's motion to dismiss.  Doc. 7-1, p. 50.

On May 11, 2015, Tate filed a notice of alibi and a motion to suppress the victim's out-of-court identification.  Doc. 7-1, pp. 51, 53-54.  On July 9, 2015, the trial court held a hearing and denied Tate's motion to suppress.  Doc. 7-1, p. 65.  Additionally, Tate, through counsel, repeatedly rejected the state's plea offers.  Doc. 7-1, pp. 66-67.  He waived his right to a jury trial on the having a weapon under a disability count and elected to try that charge to the court.  Doc. 7-1, p. 68.  The case proceeded to trial and the jury found Tate guilty on all counts charged and the court found Tate guilty of the weapon under a disability count.  Doc. 7-1, p. 70.

At sentencing, the trial court merged the felonious assault and attempted murder counts and sentenced Tate to eleven years for attempted murder; applied the 3-year firearm specification on that count; and sentenced him to 3 years on the weapons under a disability count, all to be run

consecutively, for a total of 17 years in prison.  Doc. 7-1, p. 71.

**B. Direct Appeal**

On August 28, 2015, Tate, through counsel, appealed to the Ohio Court of Appeals.  Doc.

7-1, p. 76.  In his brief, he raised the following assignments of error:

1. Defendant was denied due process of law when the court overruled defendant's motion to dismiss without a hearing.

2. Defendant was denied his right of confrontation and cross-examination when the court unduly restricted cross-examination.

3. Defendant was denied due process of law when the court admitted Exhibit 1.

4. Defendant was denied due process of law when the court overruled the motion to suppress the identification.

5. Defendant was denied due process of court [sic] and his right to present a defense when the court failed to give an instruction concerning non-compliance with § 2933.83 of the Ohio Revised Code.

6. Defendant was denied due process of law when the court erroneously expanded the definition of cause in its instruction.

7. Defendant was denied due process of law when the court instructed the jury on a non-element of delay prosecution.

8. Defendant was denied due process of law when the court overruled his motion for judgment of acquittal.

9. Defendant is entitled to a new trial as it is clearly against the manifest weight of the evidence [sic].

10. Defendant was subjected to a cruel and unusual punishment when the court, by rote recitation, imposed consecutive sentences.

11. Defendant was denied due process of law and subjected to multiple punishments when the court failed to merge the offenses of having a weapon under disability with the firearm specification.

12. Defendant was denied assistance of counsel when the court precluded arguments concerning the identification procedure.

13. Defendant was denied a fair trial by reason of improper prosecutorial argument.

Doc. 7-1, pp. 90-91.  On September 1, 2016, the Ohio Court of Appeals affirmed the trial court's

judgment and sentence.  Doc. 7-1, pp. 178-211.  On September 12, 2016, Tate filed a motion for

reconsideration (Doc. 7-1, p. 212), which the Ohio Court of Appeals denied on November 8,

2016.  Doc. 7-1, p. 222.

On December 12, 2016, Tate, through counsel, appealed to the Ohio Supreme Court.

Doc. 7-1, p. 223.  In his memorandum in support of jurisdiction, he raised the following

propositions of law:

> I. A defendant has been denied his constitutional right to speedy trial and his statutory
> right to a speedy trial where a complaint charging the same offense for which a later
> indictment was filed shows that there was a lack of any diligence to notify the defendant
> of the pending criminal charges.
>
> II. A defendant has been denied his right of confrontation and cross-examination when a
> trial court improperly restricts cross-examination on critical issues.
>
> III. A defendant has been denied due process of law when the court admits a hearsay
> exhibit for consideration of the merits of the case.
>
> IV. A defendant has been denied due process of law when the court overrules
> identification made upon a procedure which violates defendant's constitutional rights.
>
> V. A defendant has been denied due process of law and his right to present a defense
> when the court refuses to give an instruction concerning non-compliance with section
> 2933.83 of the Ohio Revised Code.
>
> VI. A defendant has been denied due process of law when the court erroneously expands
> the definition of cause in its instructions.
>
> VII. A defendant has been denied due process of law when the court instructs the jury on
> a non-element of delay prosecution.
>
> VIII. A defendant has been denied due process of law when the court overrules a motion
> for judgment of acquittal where evidence has not been presented to authorize a conviction
> beyond a reasonable doubt.
>
> IX. A defendant has been subjected to [] cruel and unusual multiple punishments when a
> court, by rote incantation, imposes consecutive sentences.

X. A defendant has been subjected to unconstitutional multiple punishments when the court fails to merge the offenses of having a weapon under a disability with the firearm specification.

Doc. 7-1, pp. 226-227.  On July 26, 2017, the Ohio Supreme Court declined to accept

jurisdiction of Tate's appeal pursuant to Ohio S.Ct.Prac.R. 7.08(B)(4).  Doc. 7-1, p. 282.

### C. Post-Conviction Relief

On August 19, 2016, Tate, through counsel, filed a petition for post-conviction relief

and/or motion for a new trial.  Doc. 7-1, p. 283.  According to the Cuyahoga County Common

Pleas Court public electronic docket, the trial court has not adjudicated the motion.

### D. Federal Habeas Petition

On April 30, 2018, Tate, through counsel, filed his Petition for a Writ of Habeas Corpus.

Doc. 1.   He listed the following grounds for relief:

**Ground One**: Sixth Amendment

**Supporting facts**: Petitioner was denied his right to a speedy trial where a criminal complaint which charged the same offense for which a later indictment was filed showed that there was a lack of any diligence to notify petitioner of the pending criminal charges.

**Ground Two**: Sixth Amendment

**Supporting facts**: Petitioner was denied his right of confrontation and cross-examination where, at trial, the court improperly restricted cross-examination on critical issues. In addition the court admitted a hearsay exhibit for consideration on the merits of the case.

**Ground Three**: Fourteenth Amendment

**Supporting facts**: Petitioner's identification as the alleged perpetrator was made using a procedure which violated petitioner's constitutional rights. It was compromised further when the court would not allow petitioner to present a defense and giving an instruction concerning non-compliance of section 2933.03 of the Ohio Revised Code.

**Ground Four**: Fourteenth Amendment

**Supporting facts**: Petitioner was denied due process of law when the court erroneously expanded the definition of cause in its instructions to the jury. Further, the court instructed the jury on a non-element of the delay in the prosecution.

**Ground Five**: Fourteenth and Sixth Amendments

**Supporting Facts**: Petitioner was subjected to a cruel and unusual multiple punishment when the trial court, by rote incantation, and imposed consecutive sentences. In addition, the court failed to merge the offenses of having a weapon while under a disability with the firearm specifications involving the same firearms thus subjecting petitioner to multiple punishments in violation of his constitutional rights.

Doc. 1, pp. 5-12.  On August 9, 2019, Respondent filed a Return of Writ.  Doc. 7.  Tate filed a Traverse (Doc. 8) and Respondent filed a reply (Doc. 9).

## II. Standard of Review under AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.,* 463 F.3d 426, 430 (6th Cir. 2006).  And in order to obtain habeas relief under 28 U.S.C. § 2254(d), a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  *Id.*

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.*

at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme

Court's decisions as of the time of the relevant state court decision, as well as legal principals

and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d

1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or

reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of

the state-court decision contradicts" such precedent.  *Early v. Packer*, 537 U.S. 3, 8 (2002);

*Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005).  If the Supreme Court has not addressed the

petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary

to, or unreasonably applied, Supreme Court precedent or clearly established federal law.  *Carey*

*v. Musladin*, 549 U.S. 70, 77 (2006); *White v. Woodall*, 572 U.S. 415, 426 (2014) ("Section

2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this

Court's precedent; it does not require state courts to *extend* that precedent or license federal

courts to treat the failure to do so as error.") (emphasis in original).

In determining whether the state court's decision involved an unreasonable application of

law, the court employs an objective standard.  *Williams*, 529 U.S. at 409.  "A state court's

determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded

jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*,

562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also*

*Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011).  "A state prisoner must show that the state

court's ruling on the claim being presented in federal court was so lacking in justification that

there was an error well understood and comprehended in existing law beyond any possibility for

fair-minded disagreement."  *Harrington*, 562 U.S. at 103.

### III. Claim Analysis

### A. Ground 1 fails on the merits

In Ground 1, Tate argues that he was denied his right to a speedy trial in violation of the Sixth Amendment. Doc. 1, p. 5. He asserts that a criminal complaint in municipal court on October 9, 2013, charged him with the same offense for which he was later indicted in common pleas court on February 27, 2015. Doc. 1, p. 5; Doc. 8, pp. 2-9.[2] He alleges that his speedy trial rights were triggered on October 9, 2013, and the long delay prejudiced him and violated his speedy trial rights. Doc. 8, pp. 3, 6. He does not state how long a delay he is alleging; he appears to complain of the 16-month delay between the filing of the municipal court complaint and the common pleas court indictment. Doc. 8, p. 2-3.

The Ohio Court of Appeals considered Tate's speedy trial claim as follows:

B. Constitutional Right to Speedy Trial

{¶ 21} The Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution guarantee a criminal defendant the right to a speedy trial. *State v. O'Brien*, 34 Ohio St.3d 7, 8, 516 N.E.2d 218 (1987).

{¶ 22} In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the United States Supreme Court established an ad hoc balancing test that weighs the conduct of both the prosecution and the defendant to determine whether a defendant has been deprived of his constitutional speedy-trial rights. The four factors to be balanced are "the [l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530, 92 S.Ct. 2182. No single factor is determinative; rather, the court should conduct a balancing test. *Id.*; *State v. Triplett*, 78 Ohio St.3d 566, 568, 679 N.E.2d 290 (1997) (applying the *Barker* test and concluding that a 54–month delay, a 1989 arrest ending in a 1993 prosecution, while significant, did not bar prosecution).

{¶ 23} In applying these factors to the instant case, we note that the sixteen-month delay, from the time the complaint was filed in Cleveland Municipal Court to when Tate was arrested, is sufficient to trigger inquiry into the other factors. *Triplett* at 568, 679 N.E.2d 290. We must next consider whether the delay resulted in any infringement of the defendant's liberty, whether there was extended pretrial incarceration, and whether the defendant suffered "disruption caused by unresolved charges." *Id.* In this matter, these considerations were not established. Therefore, while the first factor weighs in Tate's

---

[2] In Ground 1 of his Petition, Tate only alleges that his Sixth Amendment speedy trial rights were violated. Doc. 1, p. 6. He does not allege that he had a constitutional right to a hearing on his motion to dismiss, that his due process rights pursuant to the Fifth and Fourteenth Amendments were violated due to pre-indictment delay, or that the trial court violated the Ohio speedy trial statute. Accordingly, the undersigned only considers the claim Tate has alleged: that his Sixth Amendment, speedy trial rights were violated.

favor, its weight is negligible. *Id*. Accord *State v. Smith*, 8th Dist. Cuyahoga No. 81808, 2003-Ohio-3524, 2003 WL 21512796, ¶ 12 (finding that a 16–month delay weighed only negligibly in favor of the defendant on his constitutional speedy trial challenge because he was unaware of the indictment, incarcerated on unrelated charges, and there was no evidence of disruption caused by unresolved charges).

{¶ 24} As to the second factor, Tate maintains that there is no explanation for the delay, and his whereabouts were known in connection with criminal proceedings in Lake County and proceedings in Cuyahoga C.P. No. CR–13–577809, which remained pending from September 2013 until May 2014. In opposition, the state notes that Tate was arrested on a separate matter in Lake County on October 14, 2013, one day before the warrant in this matter was verified. The record indicates that a capias was issued for Tate in CR–13–577809 on October 10, 2013, and a detainer was sent to the Ohio Department of Rehabilitation and Correction on January 27, 2014. Several weeks later, it was determined that Tate was being incarcerated in Lorain county. From the foregoing, we conclude that the several months of delay in this matter is attributable to the government's neglect; therefore, this is to be weighed in Tate's favor. *Triplett* at 569, 679 N.E.2d 290.

{¶ 25} The third factor, the timeliness of Tate's motion to dismiss, is afforded weight in Tate's favor because the motion was filed approximately five weeks after the indictment and not at the last minute. *Triplett* at 570, 679 N.E.2d 290.

{¶ 26} As to the fourth factor, impairment of the defense, there is nothing in the record that affirmatively demonstrates that the delay weakened his ability to raise specific defenses, elicit specific testimony, or produce specific items of evidence. *Id*. at 570, 679 N.E.2d 290. This factor does not weigh in Tate's favor.

{¶ 27} By application of the foregoing, we reject Tate's claim of a violation of the Sixth Amendment right to a speedy trial. *Clemons*, 2013-Ohio-5131, 2 N.E.3d 930. As a result, the state has no burden of producing evidence of a justifiable reason for the 20–month preindictment delay. *Accord Brook Park v. Ruzicka*, 8th Dist. Cuyahoga No. 88990, 2008-Ohio-44, 2008 WL 94751 (no speedy trial violation where defendant was not incarcerated and was unaware of the pending charges, and was arraigned 10 months after the complaint was issued, 16 months after felony charges were dropped against him, and nearly 18 months after the alleged incident).

*Tate*, 70 N.E.3d at 1064-1066.

The undersigned notes that the Ohio Court of Appeals construed Tate's claim as alleging a speedy trial violation under both the Ohio Constitution and the United States Constitution. *Id*. at 1064. "In Ohio, … a defendant may assert preindictment speedy trial rights where the state has actually initiated its criminal prosecution or has issued an official accusation prior to indictment." *State v. Clemons*, 2 N.E.3d 930, 933 (Oh. Ct. App. 2013) (citing *State v. Davis*,

2007 WL 4696960, at *5 (Oh.Ct.App. Dec. 18, 2007), in turn citing *State v. Selvage*, 687 N.E .2d

433 (Ohio 1997) and *State v. Luck*, 472 N.E.2d 1097 (Ohio 1984)).  However, a federal claim

alleging a constitutional violation due to pre-indictment delay is governed by the Due Process

Clause of the Fifth and Fourteenth Amendments, not as a speedy trial violation under the Sixth

Amendment.  *United States v. Marion*, 404 U.S. 307, 313, 325 (1971); *Betterman v. Montana*, --

U.S.--, 136 S.Ct. 1609, 1613 (2016).  Here, Tate alleges that his Sixth Amendment speedy trial

rights were violated due to pre-indictment delay.  Thus, he appears to make his challenge based

on Ohio law, not federal law.  To the extent Tate challenges the Ohio Court of Appeals' decision

regarding his speedy trial rights under Ohio law, such a claim is not cognizable.  *Estelle v.

McGuire*, 502 U.S. 62, 67-68 (1991) ("a federal court is limited to deciding whether a conviction

violated the Constitution, laws, or treaties of the United States").  Therefore, the Court only

considers whether the Ohio Court of Appeals' decision with respect to Tate's alleged federal

speedy trial violation is unreasonable.

   The Ohio Court of Appeals' decision is not unreasonable.  The court properly applied the

four-factor test for determining whether a defendant has been denied the constitutional right to a

speedy trial established in *Barker v. Wingo*, 407 U.S. 514 (1972): the length of the delay, the

reason for the delay, the defendant's assertion of the right, and prejudice to the defendant.  *Tate*,

70 N.E.3d at 1064-1066 (citing *Barker*, 407 U.S. at 530).  The court found that three of the four

factors weighed in Tate's favor but that the last factor—prejudice to Tate—weighed against him

because he did not show how he was prejudiced.  Tate has made no attempt to explain to this

Court how he was prejudiced or that the Ohio Court of Appeals' finding that he was not is

unreasonable.  And the case law he cites in his Traverse (Doc. 8, pp. 3-9) is not on point.  He

cites Ohio cases or federal cases involving speedy trial rights for delays that occurred after the

defendant was indicted.  Here, Tate complains of a delay that occurred before he was indicted.

Furthermore, if anything, the Ohio Court of Appeals was too generous in its calculation of the triggering date for Tate's speedy trial rights.  Although it appears that Ohio case law provides that speedy trial rights are triggered by the filing of a complaint,[3] that is not the case with federal constitutional speedy trial rights.  *See Butler v. Mitchell*, 815 F.3d 87, 89-90 (1st Cir. 2016) (Souter, J.) (Sixth Amendment speedy trial triggering event is the indictment, not the complaint, *cert. denied*, --U.S. --, 137 S.Ct. 1064 (2017)); *see also Rice v. Warden, Warren Corr. Inst.*, 2019 WL 3936214, at *2, n. 2 (6th Cir. Aug. 20, 2019) (considering the merits of the petitioner's speedy trial claim as described by the Ohio state court and explaining that the petitioner's Sixth Amendment speedy trial rights may not have attached until he was arrested, citing and discussing cases finding that Sixth Amendment speedy trial rights do not attach upon the filing of a complaint and the issuance of an arrest warrant).  The United States Supreme Court has found that the Speedy Trial Clause of the Sixth Amendment is not triggered until a formal indictment or information is filed or "the actual restraints imposed by arrest and holding to answer a criminal charge" have occurred.  *United States v. Lovasco*, 431 U.S. 783, 788–789 (1977) (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)); *see also Doggett v. United States*, 505 U.S. 647, 655 (1992) (Souter, J.) (speedy trial rights do not attach until triggered by "arrest, indictment, or other official accusation."); *Betterman*, 136 S.Ct. at 1613 (speedy trial rights attach when the defendant is "arrested or formally accused.").  Thus, it appears that Tate's speedy trial rights did not attach until he was indicted on February 27, 3015.  He has not identified Supreme Court precedent holding otherwise.  There was a 4 ½ month delay between his indictment and trial (July 8, 2015), and that delay is not long enough to even trigger further analysis of the remaining *Barker* factors.  *See Brown v. Romanowski*, 845 F.3d 703, 713 (6th Cir. 2017) (a five-month delay is not "uncommonly long" so as to trigger analysis of the remaining

---

[3] *See State v. Clemons*, 2 N.E.3d 930, 933 (Oh. Ct. App. 2013) (citing cases).

*Barker* factors, quoting *Doggett*, 505 U.S. at 651, and citing *United States v. Robinson*, 455 F.3d 602, 607 (6th Cir. 2006)).

In short, the Ohio Court of Appeals' decision rejecting Tate's speedy trial claim is not unreasonable, and Ground 1 fails on the merits.

### B. Ground 2 fails on the merits

In Ground 2, Tate argues that his Sixth Amendment rights were violated when he was denied his right to confront and cross examine witnesses on critical issues and when the trial court admitted a hearsay exhibit. Doc. 1, p. 7. Specifically, Tate alleges that the trial court prohibited him from cross examining the detective who testified concerning the identification procedure and improperly admitted into evidence the photographs and other documentation used during the identification procedure when the officer who performed the identification did not testify at trial. Doc. 8, pp. 9, 11.

#### 1. Cross-examination claims

The Sixth Amendment's Confrontation Clause protects a defendant's right to cross examine witnesses. *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985). This right is not absolute—the Constitution guarantees only "an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Id.* (emphasis in original). Moreover, "trial judges retain wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

The Ohio Court of Appeals considered Tate's claim:

{¶ 30} In the second assignment of error, Tate argues that the trial court improperly restricted his cross-examination of Detective Durbin regarding the details of the photo array. Tate claims he was entitled to present information to the jury to show that the

identification procedure did not comport with R.C. 2933.83. In his third assignment of error, Tate argues that the trial court erred in admitting exhibit No. 1, a supplemental report on the administration of the photo array indicating that DeJesus had identified Tate, and in admitting improper hearsay about the blind administration of the array. In the fourth assignment of error, Tate argues that the trial court should have suppressed the identification because of alleged noncompliance with R.C. 2933.83. In the fifth assignment of error, Tate argues that the trial court erred in failing to give the jury an instruction that "[the jury] may consider credible evidence of non-compliance and determine the reliability of an eyewitness identification resulting from or related to the lineup."

{¶ 31} As an initial matter, we note that courts apply a two-step test in determining the admissibility of challenged identification testimony: (1) the defendant must demonstrate that the identification procedure was unnecessarily suggestive; and (2) if the defendant meets his burden, the court must consider whether the procedure, under the totality of the circumstances, was so unduly suggestive as to give rise to irreparable mistaken identification. *State v. Wills*, 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (8th Dist.1997), citing *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *State v. Garner*, 74 Ohio St.3d 49, 61, 656 N.E.2d 623 (1995). If the defendant fails to meet the first part of his burden, the court need not consider the totality of the circumstances test under the second prong. *State v. Green*, 117 Ohio App.3d 644, 653, 691 N.E.2d 316 (1st Dist.1996). However, if the pretrial procedures were not suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility. *Wills* at 324, 697 N.E.2d 1072.

{¶ 32} R.C. 2933.83 governs the administration of photo lineups and is aimed at preventing the use of unnecessarily suggestive procedures. *State v. Fields*, 8th Dist. Cuyahoga No. 99750, 2014-Ohio-301, 2014 WL 346723, ¶ 11; *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, 2014 WL 2167980, ¶ 18. R.C. 2933.83 requires any law enforcement agency that conducts photo lineups to adopt specific procedures for conducting the lineups. Such procedures must provide, at minimum, the use of a "blind administrator" for the photo array who does not know the identity of the suspect. The administration involves the use of a folder system or a substantially similar system. R.C. 2933.83(A)(2). The administrator conducting the lineup must make a written record of the lineup that includes all results obtained during the lineup, the names of all persons at the lineup, the date and time of the lineup, and the sources of the photographs used in the lineup. R.C. 2933.83(B)(4). The administrator is also required to inform the eyewitness that the suspect may or may not be in the lineup and that the administrator does not know the identity of the suspect. R.C. 2933.83(B)(5).

{¶ 33} When evidence of failing to comply with R.C. 2933.83 is presented at trial, the jury shall be instructed that it may consider credible evidence of noncompliance in determining the reliability of any eyewitness identification resulting from or related to the lineup. However, R.C. 2933.83(C)(1) does not provide an independent basis upon which to suppress evidence, and a trial court errs in solely relying on the statute in suppressing an identification. *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, 2013 WL 4680491.

A. Cross–Examination of Detective Durbin During Trial

{¶ 34} In the second assignment of error, Tate challenges the court's limitation on the cross-examination of Detective Durbin during trial regarding the details of the photo array. We note that a trial court has broad discretion concerning the admission of evidence, and in the absence of an abuse of discretion that materially prejudices a defendant, a reviewing court generally will not reverse an evidentiary ruling. *State v. Issa*, 93 Ohio St.3d 49, 64, 2001-Ohio-1290, 752 N.E.2d 904.

{¶ 35} In the instant case, we find no abuse of discretion because the record reveals that the trial court only sustained two objections during Tate's cross-examination of Detective Durbin. In the first instance, Tate sought to cross-examine Detective Durbin on the fact that individual pictures were not presented to DeJesus. After reviewing the record, we conclude that the trial court may have properly concluded that this questioning represented a challenge to the identification procedure, and not just credibility or reliability, after the trial court had already ruled the identification to be admissible. In the second instance, Tate sought to cross-examine Detective Durbin about the involvement of another officer, Detective Lynch, who did not testify, and the issue of his involvement was not raised during Detective Durbin's direct testimony. Therefore, we find no abuse of discretion in connection with the court's ruling.

{¶ 36} The second assignment of error is overruled.

*Tate*, 70 N.E.3d at 1066-1067.

Tate complains that the trial court sustained two objections at trial during the cross-examination of Detective Durbin. Doc. 8, p. 9. The first objection was a result of Tate's counsel asking Durbin, "…you didn't get individual pictures to show them individually, is that right?" Doc. 7-2, p. 325. Durbin answered no (the photos were not presented separately), the prosecutor objected, and the court sustained the objection. Doc. 7-2, p. 325. Just previously in his cross-examination of Durbin, Tate's counsel had established, without objection, that all six line-up photos were placed on one page and presented to the victim. Doc. 7-2, p. 324.

Prior to trial, Tate had moved to suppress the identification of him made by the victim in the photo line-up. Doc. 7-1, p. 53. During the suppression hearing, Tate's counsel had argued that the photo lineup procedure of presenting all six photos on one page, as opposed to presenting the photos in separate, individual folders, violated Ohio Rev. Code 2933.83. Doc. 7-

15

2, p. 61.  The trial court disagreed, finding that neither the text of § 2933.83 nor the case law required photos to be presented in separate folders when conducting a photo line-up procedure.  Doc. 7-2, pp. 62-63.  Accordingly, the trial court denied Tate's motion to suppress the results of the photo line-up identification.  Doc. 7-2, p. 63-64.

The Ohio Court of Appeals found that the trial court properly sustained the objection at trial because the question posed by Tate's counsel challenged the identification procedure, which the trial court had already ruled was proper.  *Tate*, 70 N.E.3d at 1067.  This finding is reasonable and Tate has not shown otherwise.  Rather, Tate merely states that the line-up procedure did not conform to the requirements in R.C. § 2933.83 and "[t]hat information should have been brought before a jury."  Doc. 8, pp. 9-10.  The Ohio Court of Appeals disagreed, and its determination of state law is binding on this Court.  *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citations omitted).  Because the trial court ruled that the photo line-up was proper, it cannot be said that the Ohio Court of Appeals' finding that Tate could not challenge that procedure through cross-examination was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

The second sustained objection during cross-examination of Durbin that Tate complains of is Tate's reference to Detective Lynch.  Doc. 8, p. 9.  The entirety of Tate's argument with respect to this claim is, "The court also sustained an objection when the name of Detective Thomas Lynch was brought up.  The court limited the examination only to the fact that Lynch was a member of the homicide unit. (Tr. 323-24)."  Doc. 8, p. 9.  He offers no explanation as to why his inability to question Detective Durbin about any purported involvement of Detective

16

Lynch violated his constitutional rights.  Tate's arguments that his constitutional rights were violated during counsel's cross-examination of Detective Durbin at trial fail on the merits.

### 2. Hearsay claim

Tate argues that the trial court erred when it admitted Exhibit 1, the photo identification papers, over his counsel's objection.  Doc. 8, p. 11.  He complains that the officer who performed the identification did not testify at trial and that Detective Durbin, who did testify at trial, was not in the room when the identification procedure was performed.  Doc. 8, pp. 9, 11.

The Confrontation Clause provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him."  U.S. CONST. Amend. VI.  A witness's testimony is inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination.  *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009) (citing *Crawford v. Washington*, 541 U.S. 36, 54 (2004)).  A finding that there has been a Confrontation Clause violation is subject to a harmless error analysis.  "[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht [v. Abrahamson*, 507 U.S. 619 (1993)]."  *Fry v. Pliler*, 551 U.S. 112, 122–23 (2007).  The court considers "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."  *Earhart v. Konteh*, 589 F.3d 337, 345 (6th Cir. 2009) (quoting *Van Arsdall*, 475 U.S. at 684)).

The Ohio Court of Appeals considered Tate's claim:

B. Admission of Exhibit No. 1 and Hearsay

{¶ 37} In the third assignment of error, Tate complains that the court erred in admitting Sergeant Peck's supplemental report on DeJesus's identification of Tate and in permitting Detective Durbin to testify regarding Sergeant Peck's involvement because Sergeant Peck did not testify at trial.

{¶ 38} We note that Sergeant Peck testified during the suppression hearing and explained his involvement as the blind administrator identified in exhibit No. 1, the photo array. At trial, Detective Durbin testified that he filled out exhibit No. 1 and went over the document with Sergeant Peck and again with DeJesus to confirm that DeJesus had identified Tate. In addition, DeJesus testified at trial that (1) Tate was the assailant; (2) he knew Tate from the neighborhood; (3) he selected Tate from the photo array; and (4) he verified his selection and he was "100 percent" certain of this selection when he was shown exhibit No. 1 again during trial. Therefore, we conclude that the trial court did not err in admitting this evidence.

{¶ 39} The third assignment of error is overruled.

*Tate*, 70 N.E.3d at 1067-1068.  After considering Tate's additional, related claims, the Ohio

Court of Appeals concluded,

{¶ 42} Further, even if the administration of the photo lineup to the victim did not comply with the statute, any impropriety regarding the photo lineup identification would not have been prejudicial. Although DeJesus did not testify at the suppression hearing and could only make "chicken scratch" near the photo of Tate, it is beyond dispute that DeJesus knew his assailant prior to the shooting and spoke with him immediately prior to the incident. DeJesus also informed the police before the array was presented that the shooter was Keith Tate who lived on Nathaniel Road. In addition, DeJesus identified him during the photo array and again during trial, and testified at trial that he was certain that Tate was the assailant and that he knew him. *Howard* at ¶ 34.

*Tate*, 70 N.E.3d at 1068.

Tate argues that Exhibit 1 should not have been admitted because the identification

procedure was conducted by Sergeant Peck, not Detective Durbin, and, therefore, Durbin's

testimony regarding the photo line-up procedure was hearsay.  Doc. 8, p. 11.  He does not

address the Ohio Court of Appeals' finding that, while Durbin did not administer the photo line-

up procedure,[4] Durbin compiled the photo line-up and completed the supplemental report, went

---

[4]  Detective Durbin explained that he did not administer the procedure because he knew that Tate was a person of interest and that his photo appeared in the line-up.  Rather, he arranged for Sergeant Peck, who "kn[e]w[] nothing

18

over the document with Peck, went over the document with DeJesus after his identification of

Tate, and confirmed that DeJesus had identified Tate.

Rather, Tate asserts that it was hearsay for Durbin to "only read an instruction sheet

concerning the identification procedure that was to be conducted by Sgt. [] Peck," to testify to

"what DeJesus did although he was not in the room," and "testified that DeJesus was …100%[]

sure of his identification of [Tate.]"  Doc. 8, p. 11.  Tate does not explain why it was hearsay for

Durbin to read the instruction sheet with the identification instructions that Durbin himself

compiled and gave to Peck.  As to what Durbin testified that DeJesus did when Durbin was not

in the room and what Durbin testified that DeJesus told him when Durbin was in the room,

DeJesus himself testified at trial as to what he did and said to Durbin and his testimony was

consistent with Durbin's.  See Doc. 7-2, pp. 314-316 (DeJesus' testimony explaining that he

made a mark by the photo of Tate on the photo line-up page shown to him and told Durbin that

he was 100% sure of his identification).  And, as the Ohio Court of Appeals found, DeJesus

informed the police before the photo line-up was presented that the shooter was Tate.  *Tate*, 70

N.E.3d at 1068.  In other words, even if the administration of the photo lineup could be said to

have violated Tate's constitutional rights, the Ohio Court of Appeals' finding that any

impropriety regarding the photo lineup identification would not have been prejudicial correctly

applied the *Brecht* harmless error standard and Tate does not allege otherwise.  It cannot be said

that there are "grave doubts" as to whether any purported error had a substantial or injurious

effect or influence in determining the jury's verdict.  *See Jensen v. Romanowski*, 590 F.3d 373,

379 (6th Cir. 2009) ("[I]f the matter is so evenly balanced that the judge has 'grave doubts' as to

whether the trial error had substantial or injurious effect or influence in determining the jury's

---

about this case," to act as a blind administrator and present the photo line-up to DeJesus, the victim/witness.  Doc. 7-
2, p. 298.

verdict, such that the matter is so evenly balanced that he feels himself in a 'virtual equipoise' as to harmlessness, the judge must treat the error as if it were harmful and grant the petitioner's writ[,]" quoting *O'Neal v. McAninch*, 513 U.S. 432, 435, 445 (2009), and *Stallings v. Bobby*, 464 F.3d 576, 582 (6th Cir. 2006)).

Ground 2 fails on the merits.

### C. A portion of Ground 3 is not cognizable and the remainder fails on the merits

In Ground 3, Tate argues that his Fourteenth Amendment rights were violated because the photo identification procedure used to identify him was improper; the trial court did not permit him to present a defense; and the trial court did not give a jury instruction regarding non-compliance with R.C. 2933.83.[5] Doc. 1, p. 8; Doc. 8, p. 13. In his Traverse, Tate explains that the trial court should have granted his motion to suppress the identification made by the victim. Doc. 8, p. 13. He argues that the photo array did not comply with R.C. § 2933.83 because six photos were shown on the same page, the trial court did not give an instruction regarding non-compliance with the statute, and the victim did not testify at the suppression hearing. Doc. 8, pp. 13-15.

To the extent Tate alleges that the photo array did not comply with R.C. § 2933.83 because it showed six photos on one page, his claim is not cognizable because it challenges state law. *Estelle*, 502 U.S. at 67-68. Moreover, as discussed above in Ground 2, the Ohio Court of Appeals' interpretation of R.C. § 2933.83 is binding on this Court. *Bradshaw*, 546 U.S. at 76; *see also Tate*, 70 N.E.3d at 1086 ("This court has previously found that it is not improper under R.C. 2933.83 to use a 'six-pack' form for the arrays[,]" citing *State v. Quarterman*, 2013-Ohio-4037, 2013 WL 5310162, at *5 (Oh.Ct. App. Sept. 19, 2013); *see also State v. Wells*, 2013-Ohio-3722, 2013 WL 4680491, at *14 (Oh. Ct. App. Aug. 29, 2013) (rejecting the defendant's

---

[5] The undersigned considered Tate's argument regarding the jury instruction in Ground 1, *supra*.

argument that six photos on one page did not comply with R.C. § 2933.83).  This includes the finding that the trial court did not err in determining that the photo line-up procedure complied with § 2933.83 and, even if it did not, that such non-compliance "does not provide an independent basis upon which to suppress evidence[.]"  *Tate*, 70 N.E.3d at 1067 (citing *Wells*, 2013 WL 4680491).  And Tate does not identify United States Supreme Court precedent holding that six photos on one page presented in a photo line-up identification procedure violates a defendant's constitutional rights.

Tate's remaining argument—that his constitutional rights were violated when the victim did not testify at the suppression hearing—fails on the merits.  The Ohio Court of Appeals set forth the two-step test in determining the admissibility of challenged identification testimony: "(1) the defendant must demonstrate that the identification procedure was unnecessarily suggestive; and (2) if the defendant meets this burden, the court must consider whether the procedure, under the totality of the circumstances, was so unduly suggestive as to give rise to irreparable mistaken identification."  *Tate*, 70 N.E.3d at 1066 (citing *State v. Wills*, 697 N.E.2d 1072 (Oh. Ct. App. 1997), *Manson v. Brathwaite*, 432 U.S. 98 (1977), and *State v. Garner*, 656 N.E.2d 623 (Ohio 1995)).  The Ohio Court of Appeals observed that, if the defendant fails to meet the first part of the burden, the court need not consider the totality of the circumstances test under the second prong and, if the pretrial procedures were not suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility.  *Id*.  The Ohio Court of Appeals went on to consider Tate's claim as follows:

> {¶ 40} In the fourth assignment of error, Tate argues that the trial court erred in denying his motion to suppress because the state did not comply with R.C. 2933.83 by presenting the photos together as an array. He also argues that the identification should have been suppressed because DeJesus did not testify at the suppression hearing, and DeJesus did not complete all of the writing on the identification form.

21

{¶ 41} This court has previously found that it is not improper under R.C. 2933.83 to use a "six-pack" form for the arrays. *State v. Quarterman*, 8th Dist. Cuyahoga No. 99317, 2013-Ohio-4037, 2013 WL 5310162, ¶ 29. In the instant case, the photo array was properly administered by a blind administrator who did not know the individuals depicted in the photos and did not know the suspect. The form attached to the array indicated that the suspect may or may not be in the array, and that the administrator did know the identity of the suspect. *State v. Howard*, 8th Dist. Cuyahoga No. 100094, 2014-Ohio-2176, 2014 WL 2167980, ¶ 31–33. Therefore, the trial court did not err in admitting the photo array identification into evidence.

{¶ 42} Further, even if the administration of the photo lineup to the victim did not comply with the statute, any impropriety regarding the photo lineup identification would not have been prejudicial. Although DeJesus did not testify at the suppression hearing and could only make "chicken scratch" near the photo of Tate, it is beyond dispute that DeJesus knew his assailant prior to the shooting and spoke with him immediately prior to the incident. DeJesus also informed the police before the array was presented that the shooter was Keith Tate who lived on Nathaniel Road. In addition, DeJesus identified him during the photo array and again during trial, and testified at trial that he was certain that Tate was the assailant and that he knew him. *Howard* at ¶ 34.

{¶ 43} The fourth assignment of error is overruled.

*Id.*, at 1068.

"When reviewing a petitioner's claim that an out-of-court identification violated his or her due process rights, a court's primary concern is with the reliability of the evidence." *Wilson v. Mitchell*, 250 F.3d 388, 397 (6th Cir. 2001) (citing *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). A two-part inquiry is used "to determine whether the Due Process Clause requires suppression of an eyewitness identification tainted by police arrangement." *Perry v. New Hampshire*, 565 U.S. 228, 238 (2012). At the first step, a court considers whether the officers use an identification procedure "that is both suggestive and unnecessary." *Id.* at 238–239 (citing *Brathwaite*, 432 U.S. at 107). If so, suppression of the identification is not inevitable; rather, the court proceeds to the second step and asks, "whether improper police conduct created a 'substantial likelihood of misidentification.'" *Id.* at 239 (citing *Neil v. Biggers*, 409 U.S. 188, 201 (1972)).

Here, the Ohio Court of Appeals cited the correct, two-step legal standard it applied to

Tate's claim. *Tate*, 70 N.E.3d at 1066.  It affirmed the trial court's finding that the identification procedure used in Tate's case was properly administered, *i.e.*, it was not unduly suggestive and suppression was not warranted. *Id.* at 1068.  Beyond complaining that the procedure in his case did not comply with Ohio state law (without referencing relevant legal authority), Tate does not explain why he believes the Court of Appeals' finding is unreasonable.  His assertion that the identification was improper because the victim/witness did not testify at the suppression hearing fails. *See also Cornwell v. Bradshaw*, 559 F.3d 398, 413 (6th Cir. 2009) (when considering the first step regarding eyewitness identification, "the court must decide *if the procedure itself* steered the witness to one suspect or another, *independent of the witness's honest recollection*[,]" citing *Wilson v. Mitchell*, 250 F.3d 388, 397 (2001) (emphasis added)).  Moreover, as the Ohio Court of Appeals observed, "it is beyond dispute" that DeJesus knew his assailant prior to the shooting and spoke with him immediately prior to the incident, informed the police before the array was presented that the shooter was Tate and identified the road he lived on, identified Tate during the trial, and testified at trial that he was certain Tate was the assailant. *Tate*, 70 N.E.3d at 1068.  Tate's claim fails on the merits.

**D. Ground 4 fails on the merits**

In Ground 4, Tate argues that his due process rights were violated when the trial court erroneously expanded the definition of "cause" in the jury instructions and "instructed the jury on a non-element of the delay in the prosecution."  Doc. 1, p. 10.

In a criminal trial, the state must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement. *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (citing *Sandstrom v. Montana*, 442 U.S. 510, 520-521 (1979)). "Nonetheless, not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is whether the ailing instruction ... so infected the

entire trial that the resulting conviction violates due process." *Id*. (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (internal quotation marks omitted).  Moreover, the instructions are viewed as a whole, not judged in isolation.  *Id*. (citing *Boyde v. California*, 494 U.S. 370, 378 (1990)).

> With respect to Tate's "cause" instruction, the Ohio Court of Appeals explained,
>
> {¶ 48} We review the court's charge for an abuse of discretion. *State v. Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, 2012 WL 5552937, ¶ 73. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Wells* at ¶ 103.
>
> B. Natural and Foreseeable Consequences
>
> {¶ 49} In the sixth assignment of error, Tate argues that the trial court's instruction on "cause" that included a reference to the "natural and foreseeable consequences" of a defendant's act, is erroneous because this undermined the state's burden of showing that Tate acted purposely.
>
> {¶ 50} Here, the court's instruction is taken from Ohio Jury Instructions. In *State v. Hanna*, 95 Ohio St.3d 285, 2002-Ohio-2221, 767 N.E.2d 678, the Ohio Supreme Court concluded that this instruction was not prejudicially erroneous. In that case, the defendant was charged with aggravated murder and the jury was given extensive instructions on the state's burden of proof and the requirement to prove purpose to kill, both before and after the foreseeability instruction was given to the jury. Similarly, in this matter, the instructions as a whole made clear that the jury was required to find purpose to kill in order to convict.
>
> {¶ 51} Further, the use of this instruction has been upheld in connection with charges involving murder, aggravated robbery, and felonious assault. *Driggins*, 8th Dist. Cuyahoga No. 98073, 2012-Ohio-5287, 2012 WL 5552937, at ¶ 81; *State v. Fair*, 2d Dist. Montgomery No. 24388, 2011-Ohio-4454, 2011 WL 3875332, ¶ 66.
>
> {¶ 52} This assignment of error is without merit.

*Tate*, 70 N.E.3d at 1069.

Tate argues that the instruction given regarding cause "is nowhere found in any Ohio statute."  Doc. 8, p. 15.  He does not contest the Ohio Court of Appeals finding that the challenged jury instruction is taken from the model Ohio Jury Instructions.  Rather, he asserts that the "cause" instruction is inconsistent with the Ohio statute setting forth attempted murder as

to attempt to "purposely cause the death of another."  Doc. 8, p. 16.  The Ohio Court of Appeals properly considered the jury instructions as a whole and found otherwise.  *Middleton*, 541 U.S. at 437.  Tate has not shown that its decision is unreasonable.  Moreover, the trial court instructed the jury on the specific intent for attempted murder and defined "purposely."  Doc. 7-2, pp. 398-400 (instructing the jury that they must find Tate "did attempt to purposely cause the death of Marcos DeJesus" and defining "purposely"); *see also Hanna v. Ishee*, 694 F.3d 596, 621-622 (6th Cir. 2012) (rejecting the petitioner's claim for habeas relief when the trial court gave a "natural and foreseeable" causation instruction while also properly instructing the jury on specific intent to "purposely cause the death" of another."); *Beltowski v. Brewer*, 766 Fed. App'x 281, 220 (March 21, 2019) (observing that when jury instructions are challenged upon federal habeas review, state courts have particular "leeway ... in reaching outcomes in case-by-case determinations[,]" quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

With respect to Tate's challenge to the delay instruction, the Ohio Court of Appeals explained,

C. Delay Instruction

{¶ 53} In the seventh assignment of error, Tate argues that the trial court violated his right to a fair trial by giving the jury an instruction on the delay between the shooting and the commencement of the trial.

{¶ 54} Here, the entirety of the instruction stated that

> any delay that occurred between the date of the incident and the presentment of this case to you cannot be considered in determining the guilt or innocence of the accused.

> Such delays, whether permissible or not, present matters for the Court and not for the jury. Any delay in this case can be considered solely for the purpose of testing the accuracy of a witness's memory and/or the credibility of any witness's testimony.

{¶ 55} We conclude that the jury instruction is accurate and fair, and that it did not prejudice Tate's right to a fair trial.

25

*Tate*, 70 N.E.3d at 1069.

Tate complains that the trial court's "delay" instruction "was completely a non-issue for jury consideration and should not have been given." Doc. 8, p. 17. He explains that this instruction was "puzzling" because the trial court had ruled that the propriety of the identification procedure was a matter for the court, not the jury. Doc. 8, p. 17. However, Tate ignores the fact that, while the propriety of the identification procedure was a matter for the court, the jury was permitted to consider any delay in the case when testing the accuracy of the witness' testimony. This instruction did not deprive Tate of a fair trial, as he contends. Doc. 8, p. 18.

Ground 4 fails on the merits.

### E. Ground 5 is not cognizable and fails on the merits

In Ground 5, Tate argues that he was subjected to cruel and unusual punishment when the trial court imposed consecutive sentences and failed to merge the having a weapon under a disability count with the firearm specification. Doc. 1, p. 12.[6] The Ohio Court of Appeals considered this claim as follows:

*Sentence*

{¶ 67} In the tenth assignment of error, Tate argues that in imposing consecutive sentences herein, the trial court did not fulfill its duties under R.C. 2929.14(C), and instead simply recited "talismanic words." He also argues that the sentence is disproportionate to other offenders because there are no facts indicating that his conduct was "more serious than conduct normally constituting the offense."

{¶ 68} Pursuant to R.C. 2953.08(G)(2), we may modify or vacate a sentence if we find by clear and convincing evidence that the record does not support any relevant findings required under R.C. 2929.14(C)(4). *State v. Marcum*, Slip Opinion No. 2016–Ohio–1002, ¶ 22. *See also State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37; *State v. Caldero*, 8th Dist. Cuyahoga No. 102523, 2015-Ohio-4498, 2015 WL 6550883, ¶ 20. The *Marcum* court stated:

---

[6] In his Traverse, Tate argues in support of a sufficiency of the evidence claim. Doc. 8, pp. 18-19. However, Tate did not allege this claim as a ground in his habeas petition. Accordingly, the Court is not required to consider this claim. *See Jalowiec v. Bradshaw*, 657 F.3d 293, 311-312 (6th Cir. 2011); *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005).

> [A]n appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.

*Id*. at ¶ 22–23.

{¶ 69} R.C. 2929.14(C)(4) requires trial courts to engage in a three-step analysis when imposing consecutive prison sentences. First, the trial court must find that "consecutive service is necessary to protect the public from future crime or to punish the offender." *Id*. Next, the trial court must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." *Id*. Finally, the trial court must find that at least one of the following applies: (1) the offender committed one or more of the multiple offenses while awaiting trial or sentencing, while under a sanction imposed under R.C. 2929.16, 2929.17, or 2929.18, or while under postrelease control for a prior offense; (2) at least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct; or (3) the offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender. R.C. 2929.14(C)(4); *Caldero* at ¶ 20.

{¶ 70} In complying with R.C. 2929.14(C)(4), however, a

> word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld.

*Caldero* at ¶ 29; *State v. Davila*, 8th Dist. Cuyahoga No. 99683, 2013-Ohio-4922, 2013 WL 5970423, ¶ 9 (the use of "talismanic words" is not necessary, as long as it is clear from the record that the trial court actually made the required statutory findings.).

{¶ 71} In this matter, the trial court concluded that Tate did not take responsibility for his actions or show any remorse. The court concluded that consecutive sentences were necessary to protect the public from future crime from Tate and to punish him for severely injuring DeJesus. The court also concluded that the sentence is not disproportionate to the seriousness of his conduct and to the danger Tate poses to the public. The court additionally noted that Tate committed the offenses while he was under indictment in case number CR–13–577899. The court stated:

> Also, as I said, at least two of these multiple offenses were committed as part of one course of conduct, and caused by him having the gun, and shooting this man was so great that no single prison term will adequately reflect the seriousness of his conduct.

And, of course, his history of criminal conduct, even I have had him before, his record is so long. His criminal conduct stems back to attempted drug trafficking in 2006, then again in 2007, drug trafficking, then possession, trafficking, obstruction of official business, all while he was a juvenile. Then as an adult, he continued on with drug trafficking and schoolyard specs, driving under suspension, [and] drug abuse.

Another drug trafficking case in 2011. Driving under suspension, drug abuse, receiving stolen property motor vehicle, drug possession, failure to comply with order or signal of police officer, then we get to attempted murder with a gun.

So for all those reasons, the court is going to sentence the defendant to 11 years on Count 1 with the three-year firearm spec running prior to and consecutive with the 11 years, and all of that will be consecutive with 3 years on Count 4, having a weapon while under disability.

{¶ 72} In this matter, after a careful review of the record, we find that the record clearly and convincingly demonstrates that the trial court made the requisite R.C. 2929.14(C)(4) findings. The trial court found on the record that consecutive sentences are necessary to protect the public from future crime by Tate and to punish him. The court also stated that the consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. In this regard, the record does not support Tate's claim that the sentence is disproportionate because the conduct was "not more serious than conduct normally constituting the offense." We note that DeJesus required emergency surgery, was placed on a ventilator, was near death before fluids were administered, and was rendered a quadriplegic from the shooting. The evidence also indicates that the shooting was completely unprovoked. In addition, the court noted that the offenses were committed while Tate was under indictment in Case No. CR–13–577899, and that Tate has an extensive criminal history. These findings satisfy the requirements of R.C. 2929.14(C)(4).

{¶ 73} Accordingly, the tenth assignment of error is overruled.

*Merger*

{¶ 74} In the eleventh assignment of error, Tate argues that the trial court erred by failing to merge the offense of having a weapon while under disability with the firearm specification from the attempted murder conviction.

{¶ 75} This exact argument has been previously considered and rejected by this court. *See State v. Cannon*, 8th Dist. Cuyahoga No. 100658, 2014-Ohio-4801, 2014 WL 5499291, ¶ 58; *State v. Shepherd*, 8th Dist. Cuyahoga No. 99503, 2013-Ohio-4912, 2013 WL 5970337, ¶ 8; *Majid*, 8th Dist. Cuyahoga No. 96855, 2012-Ohio-1192, 2012 WL 986127, ¶ 94.

{¶ 76} Therefore, this assignment of error is overruled.

*Tate*, 70 N.E.3d at 1071-1073.

Tate argues that all the trial court's considerations with respect to whether consecutive sentences should be imposed were improper.  Doc. 8, pp. 19-20.  To the extent he argues that the trial court's findings are contrary to R.C. § 2929.14(c)(4), such a claim is not cognizable because a federal court may not issue a writ of habeas corpus "on the basis of a perceived error of state law."  *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  To the extent he claims a constitutional violation because the trial court purportedly invoked only "magic words" when imposing his sentence (Doc. 8, pp. 20-21), such a claim is belied by the record.  As the Ohio Court of Appeals observed, the trial court explained on the record the reasons for the sentences imposed.  See also Doc. 7-2, pp. 434-436 (sentencing transcript).  Tate's reliance upon *Fiore v. White* (Doc. 8, p. 21) is not on point; that case involved a petitioner who was convicted of a crime (operating a hazardous waste facility without a permit) when all the elements were not proven beyond a reasonable doubt (the petitioner had a permit).  531 U.S. 225, 229 (2001).  Tate asserts that one factor the sentencing court must consider is whether the offender's conduct is more serious than that normally constituting the offense; states, "One factor would be physical or mental injuries suffered by the victim"; and claims, "There was no injury in this case."  Doc. 8, p. 22.  It should go without saying that there certainly was an injury in this case: the victim is a quadriplegic due to the fact that Tate, without any reason apparent from the record, fired a gun approximately five times and shot him while he was walking to his car in a gas station parking lot.  Tate's final assertion—that the sentence was not based on facts admitted by him at the time of his plea (Doc. 8, p. 22)—is nonsensical because Tate did not plead guilty.

Ground 5 is not cognizable and fails on the merits.

### IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Tate's habeas Petition be **DENIED**.

Dated: December 23, 2019

/s/ *Kathleen B. Burke*
_____
Kathleen B. Burke
United States Magistrate Judge

### **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); s*ee also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).